## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

JEREMY KEEL, et al., on behalf of themselves
and all others similarly situated,

      Plaintiffs,

      v.

CHARLES RUTENBERG REALTY, INC., et al.

      Defendants.

Case No. 4:25-cv-00759-SRB

---

## ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS WITH ALL DEFENDANTS

Before the Court is Plaintiff's Motion for Final Approval of Settlements with Charles Rutenberg Realty, Inc. ("Charles Rutenberg"); Tierra Antigua Realty, LLC ("Tierra Antigua Realty"); West USA Realty, Inc. ("West USA Realty"); and My Home Group Real Estate, LLC ("My Home Group Real Estate") (collectively the "Settling Defendants"). Preliminary approval was granted on October 1, 2025. *See* Doc. # 13. Notice to the Settlement Class commenced on or around October 14, 2025, and Class members were provided with an opportunity to opt out of, or object to, the Settlements. The Court received no objections in this case.[1] The Settlement Class filed Suggestions in Support of Final Approval. (Doc. # 36). The Court held a hearing on February 5, 2026, at which arguments were presented. Having fully considered the arguments at the hearing and in the written submissions, and based on all materials in the record, the motion for final approval is GRANTED.

The Court hereby ORDERS the following:

---

[1] The court received objections in the *Gibson* matter which referenced Settling Defendants here in passing. Because no objections were filed in this case, the Court does not address them herein, but to the extent necessary incorporates its final approval order in *Gibson* which is filed contemporaneously with this Order.

1. Unless defined herein, all defined terms in this Final Approval Order and any accompanying Judgment shall have the respective meanings set forth in the Settlement Agreements.

2. At preliminary approval, the Court appointed JND Legal Administration ("JND") as the Settlement Administrator. In connection with their final approval motion, Plaintiffs submitted a declaration of Jennifer M. Keough from JND summarizing the notice that was given to Class members and the resulting claims to date, opt-outs, and objections. (Doc. # 36-2). As directed by the Court, JND implemented the Class Notice Plan. Notice was provided by first-class U.S. mail, electronic mail, and digital and print publication. As stated in that declaration, over 25 million direct notices were mailed or emailed to the Class, and when combined with related notice campaigns, over 164 million notices were mailed or emailed to the Class. JND's digital notice effort delivered more than 355 million impressions. JND also implemented a Settlement Website that had over 4 million unique visitors and over 22 million page views. The Court finds that the notice program was adequate and reached more than 95% of identified Settlement Class members.

3. As of the date of this Order, 2,698,327 claims have been submitted.

4. Despite the reach of the notice program and large volume of claims, there were no objections filed in this case and only 22 opt-outs from the Settlement Class.

5. Based on the record, the Court finds that the notice given to the Settlement Class was the best notice practicable under the circumstances and satisfied the requirements of due process, Federal Rule of Civil Procedure 23, and all applicable law. The Court further finds that the notice given to the Settlement Class of the Settlements, separately, together, and in light of the previously approved settlements, was adequate and reasonable.

6. The notice fully and accurately informed members of the Settlement Class of all material elements of the Settlements. The Settlement Class Members received notice of: (a) the pendency of the Actions; (b) the terms of the proposed Settlements, including the Released Claims,

Released Parties, and Releasing Parties; (c) their rights under the proposed Settlements, including how to receive the benefits offered by the Settlements; (d) their right to exclude themselves from the Settlement Class and the proposed Settlements; (e) their right to object to any aspect of the proposed Settlements; (f) their right to appear at the Final Approval Hearing; (g) Class Counsel's request for attorneys' fees and expenses; and (h) the binding effect of any final judgment and order approving the Settlements on all Persons who did not timely exclude themselves from the Settlement Class.

7.      The Court also finds that the appropriate state and federal officials were timely notified of the Settlement Agreements under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1715, and that ninety (90) days have passed without objection as to entry of approval from any governmental entity.

8.      For the purposes of the Settlement of the claims against Settling Defendants, the Court certified the class as follows:

> All persons who sold a home that was listed on a multiple listing service[2] anywhere in the United States where a commission was paid to any brokerage in connection with the sale of the home in the following date range: October 31, 2019 to the date of Class Notice.

9.      The Court finds that certification of the Settlement Class is warranted under Federal Rule of Civil Procedure 23(a) because: (1) the members of the Settlement Class are so numerous that joinder is impracticable; (2) there are issues of law and fact common to the Settlement Class; (3) Plaintiffs' claims are typical of the claims of the Settlement Class Members; and (4) Plaintiffs and Co-Lead Counsel will fairly and adequately represent the interests of the Settlement Class members.

10.     The Court finds that certification of the Settlement Class is warranted in light of and solely for purposes of the Settlements under Federal Rule of Civil Procedure 23(b)(3) because

---

[2] Multiple Listing Service includes non-NAR multiple listing services, such as REBNY/RLS.

common issues, including whether Settling Defendants entered into any conspiracy, predominate over any questions affecting only individual members of the Settlement Class in the settlement context, and settlement of the Actions on a class basis is superior to other means of resolving the Actions as to Settling Defendants.

11.     The Court reaffirms the appointment of Jeremy Keel as the Settlement Class Representative. The Court finds that the Settlement Class Representative has and will fairly and adequately protect the interests of the Settlement Class because: (1) the interests of the Settlement Class Representative is consistent with those of Settlement Class members; (2) there appear to be no conflicts between or among the Settlement Class Representative and the other Settlement Class members; (3) the Settlement Class Representative has been and appears to be capable of continuing to be active participant in both the prosecution and the settlement of this litigation; and (4) the Settlement Class Representative and Settlement Class members are represented by qualified, reputable counsel who are experienced in preparing and prosecuting large, complicated class action cases, including those concerning violation of the antitrust laws.

12.     In making these findings, the Court has considered, *inter alia*, (1) the interests of the Settlement Class members in individually controlling the prosecution or defense of separate actions; (2) the impracticality or inefficiency of prosecuting or defending separate actions; (3) the extent and nature of any litigation concerning these claims already commenced; and (4) the desirability of concentrating the litigation of the claims in a particular forum.

13.     The Court has specifically considered that the Settlement Class is nationwide and releases claims arising from sales of homes listed on NAR and non-REALTOR® MLSs, including all claims on behalf of Class Members, as sellers, buyers, or otherwise, arising from the same factual predicate. The Settlements resolve, among others, this case where Plaintiffs plead a nationwide conspiracy on behalf of a nationwide class that expressly challenges certain NAR rules as well as rules adopted by other MLSs such as the Residential Listing Service ("RLS") of the

Real Estate Board of New York ("REBNY") and West Penn Multi-List ("WPML"). *See Keel II* Doc. #1, Compl., ¶ 103. The Complaint includes specific allegations regarding particular policies adopted in REBNY RLS and WPML that the Plaintiffs allege to be anticompetitive. *Id*. The Complaint alleges that, as a result, "Defendants' conspiracy has had the following anticompetitive effects *nationwide*," including in REBNY RLS and WPML: (a) "Home sellers have been forced to pay commissions to buyer-brokers—their adversaries in negotiations to sell their homes— thereby substantially inflating the cost of selling their homes"; (b) "Home sellers have been compelled to set a high buyer-broker commission to induce buyer-brokers to show their homes to home buyers"; (c) "Home sellers have paid inflated buyer-broker commissions and inflated total commissions"; (d) "The retention of a buyer-broker has been severed from the setting of the broker's commission; the home buyer retains the buyer-broker, while the home seller sets the buyer-broker's compensation"; and (e) "Price competition among brokers to be retained by home buyers has been restrained." *Id*. ¶ 119 (emphasis added); *see also id*. ¶¶ 23, 151 (describing "nationwide" impact).

14.     Here, the Court finds that certifying a nationwide class is warranted, including because Plaintiffs have pleaded a nationwide conspiracy and conducted extensive discovery into the alleged nationwide conspiracy and have thoroughly litigated the claims, providing a robust factual record on which to assess the claims and base negotiations. A nationwide settlement was a necessary condition of obtaining any settlement for the benefit of the class, a nationwide settlement will conserve judicial and private resources, and Class members were fully apprised of the settlement class definition through the notice process. The record reflects that it was both justified and necessary to achieve any settlement for the Settlement Class to include all MLSs for residential real estate nationwide and regardless of their formal affiliation with NAR. Moreover, the only way that the Settlements were possible was if they provided for a nationwide recovery and release.

15.     As a general matter, "[t]he law strongly favors settlements" and "[c]ourts should hospitably receive them." *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) (noting it is especially true in "a protracted, highly divisive, even bitter litigation"); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("[A] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."); *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'" (quoting *Uponor, Inc*, 716 F.3d at 1063)); *Sanderson v. Unilever Supply Chain, Inc.*, 10-cv-00775-FJG, 2011 WL 5822413, at *3 (W.D. Mo. Nov. 16, 2011) (crediting the judgment of experienced class counsel that settlement was fair, reasonable, and adequate). The presumption in favor of settlements is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005). However, the Court finds the Settlements, separately, together, and in light of the previously approved settlements, fair, reasonable, and adequate, regardless of any such presumption.

16.     The determination whether a class action settlement is "fair, reasonable, and adequate" is "committed to the sound discretion of the trial judge. Great weight is accorded his views because he is exposed to the litigants, and their strategies, positions and proofs. He is aware of the expense and possible legal bars to success. Simply stated, he is on the firing line and can evaluate the action accordingly." *Van Horn v. Trickey*, 840 F.2d 604, 606-07 (8th Cir. 1988); *see also In re Wireless*, 396 F.3d 922, 932 (8th Cir. 2005) (the ultimate question is whether the settlement is "fair, reasonable, and adequate").

17.     Rule 23(e)(2) includes four factors the Court must consider, when evaluating settlement fairness. Those factors are whether:

    (A) the Class Representatives and Class Counsel have adequately represented the class;
    (B) the proposal was negotiated at arm's length;
    (C) the relief provided for the Class is adequate, taking into account:

(i)   the costs, risks, and delay of trial and appeal;

(ii)  the effectiveness of any proposed method of distributing relief to the Class, including the method of processing Class-Member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)  any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

18.     The Eighth Circuit has also set forth four factors that a court should consider in determining whether to approve a proposed class action settlement: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *In re Wireless*, 396 F.3d 922, 932 (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975)); *Van Horn*, 840 F.2d at 607; *see also Swinton v. SquareTrade, Inc.,* 454 F. Supp. 3d 848, 861 (S.D. Iowa 2020) (finding analysis of certain Rule 23(e)(2) factors will "necessarily include analysis of [certain] related *Van Horn* factors"); *Anderson v. Travelex Insurance Services Inc..*, No. 8:18-CV-362, 2021 WL 4307093, at *2 (D. Neb. Sept. 22, 2021) (approving settlement under Rule 23(e) by evaluating *Van Horn* factors); *Cleveland v. Whirlpool Corp.*, No. 20-cv-1906, 2022 WL 2256353 (D. Minn. June 23, 2022) (evaluating settlement under Rule 23(e)(2) factors and *Van Horn*).

19.     Under Federal Rule of Civil Procedure 23(e)(2), the Court finds that the Settlements with Settling Defendants, as set forth in the Settlement Agreements, are fair, reasonable, and adequate and directs consummation of the Settlement Agreements according to their terms.

20.     First, Settlement Class Representative and Class Counsel have adequately represented the Class. Class Counsel were appointed to serve as lead counsel in *Burnett* and *Moehrl* after the courts overseeing both cases found they would adequately represent the class. *Burnett*, No. 19-CV-00332-SRB, 2022 WL 1203100 (W.D. Mo. Apr. 22, 2022); *Moehrl*, No. 19-cv-01610,

2023 WL 2683199 (N.D. Ill. Mar. 29, 2023). Class Counsel subsequently obtained a jury verdict in related litigation against NAR, HomeServices, and Keller Williams in *Burnett.* In this case, this Court appointed them as Interim Co-Lead Class Counsel for an alleged nationwide class with responsibility for any settlements. *Gibson* Doc. #180. Altogether, Class Counsel have obtained over $1 billion in proposed and approved settlements as well as significant practice change relief. Likewise, the Class Representative has bought and sold homes and have demonstrated his commitment to the litigation by responding to discovery, providing relevant documentation, and participating in the settlement process.

21.     Second, the record reflects that the Settlements were separately conducted at arm's length. The settlement negotiations were contentious and hard fought. And each occurred only after Settling Defendants provided Class Counsel with sufficient financial information for Plaintiffs to make an informed decision about settlement. Dirks Decl. at ¶¶ 21-22. There is no indication that any of the Settlements were the result of anything other than tough negotiations. The lengthy history of the related litigation, which has proceeded for years, is further evidence of the arm's length nature of these Settlements.

22.     Third, for the reasons stated above, the relief for the Class is fair and adequate. The Settlements, separately, together, and in light of the previously approved settlements, provide for a significant financial recovery to the Settlement Class in light of the strengths and weaknesses of the case and the risks and costs of continued litigation, including appeal, and the Settling Defendants' financial resources. The Settlements also include meaningful changes to the Settling Defendants' policies. The parties dispute the strength of their claims and defenses. The Settlements reflect a compromise based on the parties' educated assessments of their best-case and worst-case litigation outcomes. The best-case outcome for Plaintiffs is success at class certification, trial, and appeal, and then actually receiving the awarded damages from Defendants. But "[a]ntitrust cases are particularly risky, challenging, and widely acknowledged to be among the most complex

actions to prosecute." *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420, 2020 WL 7264559, at \*15 (N.D. Cal. Dec. 10, 2020). And it would make little sense to continue litigating against the Settling Defendants where they do not have the ability to pay the full amount sought. Dirks Decl. at ¶ 32-33.

23.    Against these risks, the Settlements add to the combined settlement pot of over $1 billion, as well as substantial practice changes. *See In re Pork Antitrust Litig.,* No. 18-1776, 2022 WL 4238416, at \*2 (D. Minn. Sept. 14, 2022) (granting final approval of antitrust settlement that provided "substantial relief against the backdrop of a great deal of uncertainty where the merits are highly contested" in case involving alleged price-fixing conspiracy among pork processing companies); *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 995-96 (N.D. Ohio 2016) (granting final approval of settlement in light of "real possibility that [plaintiffs] could have received much less—even zero—from a jury at trial or following an appeal"). The Settlements account for only part of the recovery that the Class has obtained, or could obtain, in connection with the claims arising from the alleged conspiracy. Specifically, Class Counsel obtained other settlements with other defendants that this Court previously finally approved.

24.    In addition, the record reflects that the proposed method for distributing relief to the Class, including the proposed method for processing Class member claims, will be effective. The Court-appointed notice and claims administrator, JND, will work with Class Counsel in processing Class member claims and distributing relief. JND has extensive experience in distributing relief in connection with large and complex class action settlements. Keough Decl. at ¶ 1. JND will be responsible for reviewing claim forms and evidence to determine whether claims should be approved, and any claim that cannot be confirmed may be subject to challenge, nonpayment, or a reduced share of the available funds. *See* Settlement Notice at ¶ 8. Class members with approved claims will have several options for receiving payment, including by debit card,

Zelle, Venmo, or check. *See* Claim Form at p 1. Finally, as discussed below, the attorneys' fee request is reasonable and in line with Eighth Circuit precedent.

25.     Fourth, the Settlements, separately, together, and in light of the previously approved settlements, treat Class members fairly and equitably relative to each other. The practice change relief applies to all Class members nationwide. With respect to the monetary relief, every person who meets the class definition is eligible to submit and receive compensation for a claim. That is all that is required. *Petrovic*, 200 F.3d at 1152–53 ("We do not agree with the objectors' contention that a mailed notice of settlement must contain a formula for calculating individual awards.").

26.     Finally, there are no requested service awards under these Settlements.

27.     The *Van Horn* factors also support settlement approval. As discussed above under the Rule 23(e)(2) factors, the Settlements each reflect a compromise based on the parties' educated assessments of their best-case and worst-case scenarios, and the likelihood of various potential outcomes, including potential financial outcomes of the Settling Defendants. Plaintiffs' claims raise numerous complex legal and factual issues under antitrust law. This is reflected in the voluminous briefing in this and the related litigation, which includes extensive class certification and summary judgment briefing and evidence, as well as post-trial briefing. In addition, Plaintiffs have engaged in extensive appellate briefing in the related litigation, including Rule 23(f) petitions, as well as two separate appeals concerning arbitration issues, and a denial of certiorari by the United States Supreme Court. By contrast, the Settlements provide for certain and relatively swift recovery for the Class. In light of the many uncertainties of continued litigation, a significant and certain recovery weighs in favor of approving the proposed Settlements. *See In re Coordinated Pretrial Proc. in Antibiotic Antitrust Actions*, 410 F. Supp. 669, 678 (D. Minn. 1974) (approving settlement where price-fixing claims faced "substantial roadblocks" on top of the "difficulties inherent" in prevailing on such claims); *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1137 (8th Cir. 1984) (affirming final approval of settlement where "no reported opinion

addresses the precise [merits] question presented here," which created "a substantial question whether [plaintiff] would prevail"); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 393 (D.D.C. 2002) ("Any verdict inevitably would have led to an appeal and might well have resulted in appeals by both sides and a possible remand for retrial, thereby further delaying final resolution of this case. These factors weigh in favor of the proposed Settlement.") (cleaned up).

28.     The fairness, adequacy, and reasonableness of the Settlements, separately, together, and in light of the previously approved settlements, are also supported by the Settling Defendants' financial condition and their inability to satisfy a worst-case judgment. As discussed above, the record reflects that, in order to evaluate the Settling Defendants' financial condition, Plaintiffs reviewed financial information pertaining to each Settling Defendant and considered each's ability to pay. These amounts are reasonable in light of limitations on the Settling Defendants' ability to pay. "[A] defendant is not required to 'empty its coffers' before a settlement can be found adequate." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 665 (S.D.N.Y. 2015) (quoting *In re Sony SXRD Rear Projection T.V. Class Action Litig.*, No. 06-cv-5173, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008)); *see also Grunin*, 513 F.2d at 125 (affirming antitrust settlement and explaining that a "total victory" for plaintiffs after trial "would have been financially disastrous if not fatal" to the defendant, and the final settlement "gave valuable concessions to the [settlement class] yet maintained [the defendant's] corporate viability").

29.     As discussed above, the litigation as a whole has been complex and expensive, and if it were to proceed without settlement it would remain so. The Court has observed first-hand the complexity and expense of the litigation. Settling Defendants have and would raise numerous procedural and legal challenges to the case if they were not settling.

30.     Finally, the lack of opposition to the Settlements supports approval of the Settlements. The Settlement Class Representative has approved the Settlements. More than 2.68 million claims have been submitted and 22 opted out. Keough Decl. at ¶¶ 48, 51-52. This supports

granting final approval. *See, e.g.*, *Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) (determining with a settlement class of approximately 3.5 million households, where "only fourteen class members submitted timely objections," the "amount of opposition is minuscule when compared with other settlements that we have approved"); *Bishop v. DeLaval Inc.*, No. 5:19-cv-06129-SRB, 2022 WL 18957112, at *1 (W.D. Mo. July 20, 2022) ("[A] low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval") (quoting *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015)); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. MDL 1559 4:03-MD-015, 2004 WL 3671053, at *13 (W.D. Mo. Apr. 20, 2004) (of the 4,838,789 settlement class members who were sent notice, only 620 (0.012%) opted out of the settlement and only 33 (0.00068%) objected to the settlement, which "are strong indicators that the Settlement Agreement was viewed as fair by an overwhelming majority of Settlement Class members and weighs heavily in favor of settlement"); *In re Tex. Prison Litig.*, 191 F.R.D. 164, 175 (W.D. Mo. 1999) ("The objectors represent only about 8 per cent of the class, and this relatively low level of opposition to the settlement also indicates its fairness. The Court has an obligation not only to the minority of class members who filed objections, but also to the majority who, by their silence, indicated their approval of the Settlement Agreement.") (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995)); *see also, e.g.*, *Van Horn*, 840 F.2d at 607 ("the amount of opposition to the settlement" is a factor to be considered in the settlement approval process); *Marshall*, 787 F.3d at 513 ("We have previously approved class-action settlements even when almost half the class objected to it.").

31.     This Court's order granting final approval of the Settlements is also supported by the substantial benefits to the class afforded by the practice changes obtained by the Settlements.

**The Settlement Class, Settlement Processing, Attorneys' Fees, Injunction, and Related Issues**

32.     The Court finds the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are met, and the Court reaffirms the appointment of the law firms of Ketchmark and McCreight P.C., Williams Dirks Dameron LLC, Boulware Law LLC, Hagens Berman Sobol Shapiro LLP, Cohen, Milstein, Sellers & Toll, PLLC, and Susman Godfrey LLP as Co-Lead Counsel for the Settlement Class ("Class Counsel").

33.     The 22 persons and entities identified by Class Counsel (*see* Exhibit I to Keough Decl.) have timely and validly requested exclusion from the Settlement Class and are therefore excluded from the Settlement Class and are not bound by this Order, and may not make any claim upon or receive any benefit from the Settlements. Nothing in this Order should be construed as a determination by this Court that the excluded persons and entities are members of the Settlement Class or that they meet other prerequisites, such as standing, for bringing claims alleged in the Actions. Each Settlement Class member who is not listed in Exhibit I to the Keough Declaration is bound by this Order and will remain forever bound, including by releasing all Released Claims of Releasing Parties against Released Parties. The Court specifically approves these releases as set forth in the Settlement Agreements.

34.     Settlement Class Members are hereby enjoined from filing, commencing, prosecuting, intervening in, or pursuing as a plaintiff or class member any Released Claims against any of the Released Parties. *See* 28 U.S.C. § 1651; *Bank of Am., N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d 906, 914 (8th Cir. 2010) (noting that "the district court has the inherent ability to protect its own jurisdiction over the dispute pending before it"); *Janson v. LegalZoom.com, Inc.*, No. 2:10-CV-04018-NKL, 2012 WL 13047852, at *2 (W.D. Mo. Apr. 30, 2012) ("In order to protect the continuing jurisdiction of the Court, prevent a multiplicity of lawsuits, and protect and effectuate the Court's Judgment in this Litigation, Plaintiffs and Class Members . . . are barred and enjoined from instituting, commencing, or continuing to prosecute . . . any action in this Court, any other state or federal court, or any other tribunal or forum of any kind, against any Released Party that

asserts any claims that are Released Claims under the terms of the Settlement[.]") (granting final approval); *accord Almanzar v. Home Depot U.S.A., Inc.*, No. 2:20-CV-0699-KJN, 2024 WL 36175, at \*13 (E.D. Cal. Jan. 3, 2024); *Smith v. Floor & Decor Outlets of Am., Inc.*, No. 1:15-CV-04316-ELR, 2017 WL 11495273, at \*6 (N.D. Ga. Jan. 10, 2017); *In re Ortho. Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 188 (E.D. Pa. 1997). Released Claims include any and all manner of federal and state claims regardless of cause of action that arise from or relate to conduct that was alleged or could have been alleged in the Actions based on any or all of the same factual predicates for the claims alleged in the Actions, including but not limited to commissions negotiated, offered, obtained, or paid to brokerages in connection with the sale of any residential home. For the avoidance of doubt, this injunction extends to claims arising from or relating to transactions where Settlement Class members either sold or purchased a home on any MLS nationwide, regardless of affiliation or association with NAR or not, and thus includes, *e.g.*, NWMLS, WPML, and REBNY/RLS. This injunction does not extend to any individual claims that a plaintiff or class member may have against his or her own broker or agent based on breach of contract or tort of any kind (other than a breach of contract or tort based on any factual predicate in these Actions), breach of fiduciary duty, malpractice, negligence or other tort claim, other than a claim that a class member paid an excessive commission or home price due to the claims at issue in the Actions.

35.     This Order does not settle or compromise any claims by Class Representative or the Settlement Class against entities or persons other than Released Parties, and all rights against any other person or entity are specifically reserved.

36.     Settling Defendants shall issue payment in accordance with their respective Settlement Agreements.

37.     Class Counsel have adequately represented the Class. Their application for an award of attorneys' fees and reimbursement of costs as set forth in the Motion for Attorneys' Fees

and Costs (Doc. #35) is hereby approved and shall be paid in accordance with the Settlement Agreements.

38.     Courts in the Eighth Circuit typically use the "percentage-of-the-fund method" to award attorneys' fees from a common fund. *See, e.g.*, *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019). "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established,'" *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (quoting *Petrovic*, 200 F.3d at 1157), or even "preferable,'" *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-4321, 2015 WL 3460346, at *3 (W.D. Mo. June 1, 2015) (quoting *West v. PSS World Med., Inc.*, No. 13-CV-574, 2014 WL 1648741, at *1 (E.D. Mo. Apr. 24, 2014)). The percentage method aligns the interests of the attorneys and the class members by incentivizing counsel to maximize the class's recovery. *See Johnston*, 83 F.3d at 245 ("[T]he Task Force [established by the Third Circuit] recommended that the percentage of the benefit method be employed in common fund situations.") (citing *Court Awarded Attorneys Fees,* Report of the Third Circuit Task Force, 108 F.R.D. 237, 255 (3rd Cir. 1985)).

39.     The Court will therefore use the percentage approach to award fees in this case. This Court and others within the Eighth Circuit confirm that one-third of the common fund is an appropriate amount for class counsel's fees in complex class actions, including antitrust litigation. Eighth Circuit and Missouri courts "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions." *Huyer*, 849 F.3d at 399 (quoting *In re Xcel,* 364 F. Supp. 2d at 998); *see also Rawa*, 934 F.3d at 870 ("courts have frequently awarded attorneys' fees ranging up to 36% in class actions") (quoting *Huyer*, 849 F.3d at 399); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (holding fee award of 33% reasonable); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir.2002) (affirming fee award representing 36% of the settlement fund as reasonable); *In re Xcel,* 364

F.Supp.2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25% and 36%). This District recently approved one-third of the fund in a settlement valued at $325 million. *See Rogowski v. State Farm Life Ins. Co.*, No. 22-CV-203, 2023 WL 5125113, *4-5 (W.D. Mo. April 18, 2023). Thus, judges in the Western District of Missouri and the Eighth Circuit routinely apply the one-third-of-the-fund fee calculation, even to large settlements.

40.     In doing so, courts typically consider some or all of the relevant factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *See In re Target Corp.*, 892 F.3d at 977. The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 977 n.7. To be sure, "[m]any of the *Johnson* factors are related to one another and lend themselves to being analyzed in tandem." *Swinton.*, 454 F. Supp. 3d at 886. Therefore, courts in the Eighth Circuit often focus on the most relevant *Johnson* factors in evaluating fee requests. *See Huyer*, 849 F.3d at 398–400 (affirming trial court's award of one-third of the common fund after review of Johnson factors one to five only); *In re Xcel*, 364 F. Supp. 2d at 993; *Tussey v. ABB, Inc.*, No. 06-CV-4305, 2019 WL 3859763, at *2 (W.D. Mo. Aug. 16, 2019); *Yarrington*, 697 F. Supp. 2d at 1062; *Hardman v. Bd. of Educ. of Dollarway, Arkansas Sch. Dist.*, 714 F.2d 823, 825 (8th Cir. 1983). The Court has considered the *Johnson* factors here, and finds that each weighs in favor of Plaintiffs' fee request. *See also* Klonoff Fee Decl. at ¶¶ 26, 34, 36, 39.

41.     Here, Class Counsel's time and labor invested was substantial and necessarily precluded other work. In addition to the over 124,000 hours they have dedicated to the litigation

through October 31, 2025. Class Counsel also expended over $17.4 million of their own money toward the combined litigation. That work was undertaken without any guarantee of payment. Moreover, the litigation faced low odds of early settlements given the litigation challenged certain practices that were central to the real estate brokerage industry.[3] Indeed, the industry took the position that the cases were "baseless."[4] In sum, "the extraordinary level of work and result achieved here in the face of enormous risk warrants a substantial fee percentage." *Gibson* Doc. #702-10, Klonoff Fee Decl. at ¶ 89.

42.     "Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *Yarrington*, 697 F. Supp. 2d at 1062 (quoting *In re Xcel*, 364 F. Supp. 2d at 994); Theodore Eisenberg & Geoffrey Miller, *Attorney Fees In Class Action Settlements: An Empirical Study*, 1 J. Emp. L. Studies 27, 27, 38 (2004) ("Fees are also correlated with risk: the presence of high risk is associated with a higher fee, while low-risk cases generate lower fees . . . . [This] is widely accepted in the literature."). "Unless that risk is compensated with a commensurate award, no firm, no matter how large or well-financed, will have the incentive to consider pursuing a case such as this." *Tussey*, 2019 WL 3859763, at *3. "Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success." *Been v. O.K. Indus., Inc.*, No. 02-CV-285, 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011).

---

[3] *See, e.g.*, *How the $1.8 Billion Real-Estate Commissions Lawsuit Came to Be*, Wall Street Journal (Nov. 26, 2023), https://www.wsj.com/real-estate/how-the-1-8-billion-real-estate-commissions-lawsuit-came-to-be-106433d1 ("Antitrust cases almost always settle before trial, giving attorneys some assurance they will get paid something. But in this case, the damages were so high and the threat to the industry so existential that plaintiff attorneys thought it unlikely NAR would settle.").

[4] *See, e.g.*, *Realtor Group Moves to Dismiss Class Action Lawsuit Alleging Collusion,* Forbes (May 21, 2019), https://www.forbes.com/sites/alyyale/2019/05/21/realtor-group-moves-to-dismiss-class-action-lawsuit-alleging-collusion/ ("According to John Smaby, president of NAR, all three claims have no merit. 'In today's complex real estate environment, REALTORS and Multiple Listing Services promote a pro-consumer, pro-competitive market for home buyers and sellers, contrary to the baseless claims of these class action attorneys,' he said. 'Our filing today shows the lawsuit is wrong on the facts, wrong on the economics and wrong on the law.'").

And critically, "[t]he risks plaintiffs' counsel faced must be assessed as they existed in the morning of the action, not in light of the settlement ultimately achieved at the end of the day." *In re Xcel*, 364 F. Supp. 2d at 994.

43.     In addition, the complexity and difficulty of prosecuting the claims in this case supports the requested attorneys' fees. Courts regularly award one-third of the fund in antitrust suits involving especially complex, expensive, and difficult to prosecute claims. *See In re Peanut Farmers Antitrust Litig.,* No. 19-CV-00463, 2021 WL 9494033, at *6 (E.D. Va. Aug. 10, 2021) ("[A]n award of one-third is also common in antitrust class actions.") (citing cases); *In re Urethane*, 2016 WL 4060156, at *5 (awarding one-third of $835 million settlement, noting "a one-third fee is customary"); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 100, 106 (E.D. Pa. 2013) (awarding one-third of the settlement fund as attorneys' fees in which court relied upon the fact that class counsel had litigated a number of hotly contested *Daubert* challenges)*; see also* Klonoff Fee Decl. at ¶ 41.

44.     Courts often judge class counsel's skill against the "quality and vigor of opposing counsel . . . ." *In re Charter Commc'ns, Inc.*, No. 4:02-CV-1186, 2005 WL 4045741, at *17 (E.D. Mo. June 30, 2005) (citing *In re IBP, Inc. Sec. Litig.*, 328 F. Supp. 2d 1056, 1064 (D.S.D. 2004)). In the litigation, Class Counsel faced off against no fewer than forty highly-respected law firms over the course of the litigation. Although Class Counsel's team included some of the country's most accomplished class action and trial lawyers, Defendants also hired some of the country's most prominent and respected defense attorneys. This weighs heavily in favor of the requested award.

45.     In the Eighth Circuit, courts have "frequently awarded attorneys' fees ranging up to 36% in class actions." *Huyer*, 849 F.3d at 399. Courts have recognized that prosecution of antitrust claims should result in a one-third-of-the-fund fee award. *See In re Peanut Farmers,* 2021 WL 9494033, at *6 ("[A]n award of one-third is also common in antitrust class actions.") (citing

cases); *In re Urethane*, 2016 WL 4060156, at *5 (awarding one-third of $835 million antitrust settlement and noting "a one-third fee is customary").

46.     Moreover, the requested one-third fee award is equal to or less than what the actual Named Plaintiffs—those with the most on the line and most involved in the case—agreed to at the outset of the case. Some class representatives agreed to a 35% fee. Dirks Fee Decl. (Doc. #35-1) at ¶28. Others agreed to a fee of up to 33.3%. Berman Fee Decl. (*Gibson* Doc. #702-4) at ¶ 10. These factors also support Plaintiffs' request. Klonoff Fee Decl. (*Gibson* Doc. #702-10) at ¶¶ 62.

47.     The Fund is also cash only and non-reversionary; so, the Settlements, plus interest earned until its distribution, require no further valuation. In requesting a fee as a percentage of the Fund, Class Counsel necessarily seek a fee proportionate to the degree of monetary success obtained.

48.     Here, the request is supported by both the size of the recovery and the results obtained as compared to the risk of a lesser recovery or none at all. Moreover, the Settlements represent only a part of the recovery to the Class because Class Counsel have prosecuted these joint and several liability claims against other Defendants. Thus, any past and future settlements or judgments will also benefit the Class. This factor supports a contingency percentage of one-third, particularly given the benefits achieved. Importantly, success—including "exceptional success"—is not measured solely by the maximum damages alleged but must be evaluated against any "unusually difficult or risky circumstances and the size of plaintiffs' recovery." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204–05 (S.D. Fla. 2006).

49.     The requested fee award is also supported by the significant practice change relief reflected in the Settlements which require the Settling Defendants, among other things, to eliminate and not enforce rules mandating compensation offers to cooperating broker on all MLS listings. Counsel is not seeking any additional fee for this valuable relief on these Settlements, but the value

of this relief is substantial and is appropriately considered in evaluating the fee that is sought. *See* Klonoff Fee Decl. at ¶¶ 97-99.

50.     A lodestar crosscheck is "not required" in the Eighth Circuit. *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017); *PHT Holdings II, LLC v. N. Am. Co. for Life & Health Ins.*, No. 4:18-CV-00368-SMR-HCA, 2023 WL 8522980, at *7 (S.D. Iowa Nov. 30, 2023).[5] However, performing such a crosscheck here confirms that the requested fee is reasonable and should be approved. As noted above, the Court finds that Class Counsel have reasonably expended over 124,000 hours through October 31, 2025 in prosecuting this case as well as the *Keel*, *Umpa*, *Burnett*, and *Moehrl* matters, and the Class Counsel's hourly rates are reasonable, including because they are consistent with the market rates of other lawyers practicing complex litigation of this type, including the firms defending this case. These hours result in an overall lodestar of over $100 million. When considered together with fees previously awarded in *Burnett* and this case, the current fee request results in an approximate 3.27 multiplier on lodestar, which is well within the range of reasonableness. *See* Klonoff Fee Decl. at ¶ 122; *Rawa*, 934 F.3d at 870 (observing a lodestar multiplier of 5.3 is within the bounds of reasonableness); *Huyer*, 849 F.3d at 399–400 (observing lodestar multipliers of up to 5.6 times class counsel's lodestar to be in the reasonable range for a lodestar crosscheck); *In re T-Mobile Customer Data Security Breach Litig.*, 111 F.4th at 861 (observing in a case that settled early in the litigation that a multiplier of 5.3 is on the "high" side of reasonableness) (citing *Rawa*, 934 F.3d at 870)); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-cv-1186-CAS, 2005 WL 4045741, at *18 (E.D. Mo. Jun. 30, 2005) (finding 5.61 lodestar multiplier reasonable); *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2019 WL

---

[5] "'[T]o overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services.'" *Rawa*, 934 F.3d at 870 (quoting *In re Charter Commc'ns*, 2005 WL 4045741, at *18). *Cf. In re T-Mobile Customer Data Security Breach Lit.*, 111 F.4th at 862 (observing that a lodestar crosscheck is not required but can be warranted "when a megafund case settles quickly").

1274813, at *5 (D. Kan. Mar. 20, 2019) ("a multiplier of 3 is well within the range allowed in other cases involving large settlements"). Moreover, Class Counsel has continued to work on the litigation. Plaintiffs' request of fees of one-third of the fund is reasonable.

51.     Additionally, upon review, the Court finds that Plaintiffs' request of fees of one-third of the fund is reasonable in light of the Eighth Circuit precedent in *In re T-Mobile Customer Data Security Breach Litigation*. Unlike the parties in *T-Mobile*, who following "a few days of mediation, and less than a month after class counsel had filed the complaint," agreed to the basic terms of a settlement, here Plaintiffs have spent more than five years, over 124,000 hours, and over $17.4 million in reasonable and necessary expenses. *T-Mobile*, 111 F.4th at 855; Dirks Fee Decl. at ¶ 47. Additionally, Plaintiffs' counsel dealt with over forty different firms representing multiple Settling Defendants. The current Settlements were only reached after significant arms-length and adversarial negotiations with each Settling Defendant. While "recovery in a particular case [may] stem[] more from class size than attorney effort and so might merit a lower fee award," given the immense time and effort expended by Plaintiffs' counsel with multiple Settling Defendants and their respective counsel, Plaintiffs' request of fees of one-third of the fund is reasonable. *T-Mobile*, 111 F.4th at 860.

52.     The Court also grants Plaintiffs' request for their costs. The expenses submitted were reasonable expenses in such a large and complex litigation.

53.     The Settlement Administrator shall be paid in accordance with the relevant Settlement Agreements.

54.     The Court authorizes payments to be made from the Escrow Accounts under the Settlement Agreements as qualified settlement funds ("QSF") as defined in Section 1.468B-1(a) of the U.S. Treasury Regulations and retains continuing jurisdiction as to any issue that may arise in connection with the formation or administration of the QSFs. Co-Lead Counsel are, in

accordance with the Settlement Agreements, authorized to withdraw up to the amounts allowed by the Settlement Agreements out of the Escrow Accounts.

55. Co-Lead Counsel are directed to prepare and submit for Court approval a plan of allocation for the Settlement Fund, and to propose a schedule for comment and Court review. The proposed plan of allocation must be posted to https://www.realestatecommissionlitigation.com and emailed to all individuals who submit a claim in order to provide those individuals an opportunity to comment on the plan. After the plan of allocation is proposed and an opportunity to comment has been provided, the Court will evaluate the proposed plan and any objections thereto. The Court's review of the plan of allocation will be conducted separately from this final review of the Settlements. The Court believes that this additional layer of protection to the Class supports the Court's finding that the Settlements treat Class members equitably.

56. Pursuant to Federal Rule of Civil Procedure 54(b), this Court directs entry of final judgment of dismissal with prejudice and without costs (except as provided in the Settlements) as to the defendants covered by the Settlements. This case contains claims against multiple parties, and there is no just reason to delay the entry of final judgment as to these Settling Defendants, especially considering the practice change relief and money to be paid to the class should not be delayed.

57. Settling Defendants have denied any liability, fault, or wrongdoing of any kind in connection with the allegations in the Actions, and as such, neither the Settlements, nor any of their respective terms or provisions, nor any of the negotiations or proceedings connected with the Settlements shall be construed as an admission or concession of the truth of any of the allegations, claims, point of fact or law on the part of any party, or of any liability, fault, or wrongdoing of any kind by Settling Defendants.

58. The Court retains continuing and exclusive jurisdiction over all matters relating to the administration and consummation of the Settlements and to interpret, implement, administer

and enforce the Settlements (including with respect to the scope of the Settlement Class, Released Claims, and Released Parties), in accordance with their terms, and to implement and complete the claims administration process, in accordance with the Settlements, for the benefit of the Settlement Class. The Court does this for the purpose of satisfying the requirements of *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994), concerning the obligation of a Court entering a settlement agreement to speak clearly when it wishes to retain jurisdiction.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: February 5, 2026